IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRIT OF ARKANSAS
FAYETTEVILLE DIVISION

KORINNE SHIRLEY                                                                    PLAINTIFF

V.                                    NO. 14-5294

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Korinne Shirley, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her current application for DIB on November 15, 2011, alleging an inability to work since October 8, 2011, due to narcolepsy, severe bipolar disorder, Raynaud's syndrome, hypertension, and migraines. (Tr. 150-156, 177, 181). An administrative hearing was held on November 7, 2012, at which Plaintiff appeared with counsel, and she and her husband testified. (Tr. 61-94).

By written decision dated March 15, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

1

narcolepsy with cataplexy, headaches, disorder of the left shoulder, and bipolar disorder. (Tr. 46). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 46). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except that with her left upper extremity she can only reach frequently in all directions, including overhead. She must avoid even moderate exposure to hazards, such as machinery and heights, and she is limited to occupations that do not require the operation of a motor vehicle. The claimant can do work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment involved and supervision is simple, direct and concrete.

(Tr. 48-49). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform her past relevant work, but would be able to perform such jobs as routing clerk and merchandise marker. (Tr. 53-54).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information and denied that request on July 29, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583

(8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe

3

physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.     Discussion:

Plaintiff raises two issues in this matter:  1) Whether the ALJ erred in discounting Plaintiff's subjective complaints; and 2) Whether the ALJ erred in weighing medical opinions. (Doc. 10).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 50).  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has

4

observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

With respect to daily activities, the ALJ discussed the fact that Plaintiff was able to go shopping, clean and do laundry with help from her husband and son, prepare meals four or five times a week, read as a hobby, and had no problems with personal care. He therefore concluded that those facts showed her narcolepsy and other physical impairments were not as limiting as alleged. (Tr. 50). However, what the ALJ failed to mention was the fact that her husband testified on November 7, 2012, that the cataplexy started about a year prior, that if she was standing, she would sometimes either just fall forward or drop to her knees and fall forward or into whatever is in front of her. (Tr. 84). On December 5, 2011, Plaintiff's husband reported that he and his wife spent 24/7 together, that he took her where she needed to go, that he made sure she was awake when cooking and handling hot pots and pans and knives. (Tr. 189). In addition, it is not disputed that Plaintiff had three motor vehicle accidents within a period of two years, and upon request of her treating physician, Dr. John Caswell, Plaintiff surrendered her driver's license.

The ALJ referred to the multiple medications Plaintiff took for her bipolar disorder, noting that Dr. Madhu T. Kalyan, of Northwest Pulmonology and Sleep Medicine, one of Plaintiff's treating physicians, reported on March 19, 2012, that the medications could cause significant sleep disturbances, including hypersomnia. (Tr. 51). The ALJ concluded that this statement would indicate that Plaintiff's problems with narcolepsy and cataplexy could be controlled with proper management of her medications and were not as limiting as alleged. (Tr. 51).

5

The Court notes that on July 8, 2011, Dr. Kalyan reported that tests revealed Plaintiff had severe daytime hypersomnolence, and although she was taking Ritalin and Nuvigil to improve her alertness, she continued to have some residual daytime hypersomnolence, and recommended she take 20 to 30 minute naps every four hours if needed during the daytime. The ALJ gave little weight to his statement, stating that Dr. Kalyan's opinion states that she only had "some" daytime somnolence, and that his opinion did not take into account his later statement that she was taking medication that could cause hypersomnolence.  The fact that Plaintiff is required to take medication for her narcolepsy with cataplexy and bipolar disorder requires the ALJ to consider the combined effects of the medications in determining her ability to function in the workplace on a daily basis.

The Court does not believe the ALJ properly considered the side effects of Plaintiff's medications and the combined effects of Plaintiff's narcolepsy with cataplexy and bipolar disorder.  As was the case in Barton v. Astrue, No. 12-2079, 2013 WL 4042834 at *3 (W.D. Ark., Aug. 8, 2013), it is quite possible that the combination of the two could be more severe than the impairments considered individually. Id.  Accordingly, the Court finds it appropriate to remand this matter in order for the ALJ to develop the record further regarding the connection between Plaintiff's narcolepsy with cataplexy and bipolar disorder, to obtain the assessment of an examining specialist, who can opine regarding the combined effects of Plaintiff's disorders, to more fully consider and discuss Plaintiff's credibility, and to re-evaluate the weight given to the opinions of the various physicians and his RFC.

**IV.   Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, reverses and remands this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 12th day of January, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE